Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning and may it please the Court. The trial court made two reversible errors here. First, it wrongly held that Congress's repeal of the Contract Settlement Act of 1944, effective as of 2011, did not cover a CSA termination complaint submitted under that claims processing statute in 2019. And second, the Court wrongly failed to apply res judicata in Shell 2 to a claim that contained exactly the same damages that were sought and abandoned in Shell 1. Now, first, Congress repealed the CSA... Mr. Cessini, this is Judge Toronto. Can I get a clarification about something? Aside from interest, do you agree that the Tucker Act would support jurisdiction over the damages that are now in front of us? Yes, in this case, the Tucker Act would because all of the costs were incurred less than six years ago. And also, plaintiffs may elect to certify a contract dispute that claim, which, because it's a pre-1995 contract, is also very forgiving on the statute of limitations. Right, but I guess with the Tucker Act, for example, I mean, if we were to find the Contract Settlement Act not applicable, and to reject your res judicata argument, we could affirm, could we not, on all but the $75,000 or so in interest? Yes, yes, that would be the outcome. Okay, thanks. Okay, counsel, now I want to interrupt you. This is Judge O'Malley. Wouldn't your argument with respect to the CSA have applied to the last case where the monies at issue were up to 2015? Well, we don't believe so because under the CSA, there was a well-founded CSA claim that was filed in 2005 and then a complaint in 2006. So, they exercised their rights to go into the Court of Federal Claims. And once they were in the Court of Federal Claims, the proceeding had already begun. But it wasn't cut off interest in that case? Likely not. And the reason would be is that the proceeding had already begun and then the Court had the authority under Rule 15 to kind of gross up a claim to the time of judgment, which is what the court did in that case. And you didn't raise this issue at all in that case? Right, and we didn't raise that issue and it's a jurisdictional issue. So, it's certainly not waivable in any way. What is the authority? I don't remember whether you cited. I think all of this rests on the idea that under the Tucker Act, there is no waiver of sovereign immunity for prejudgment interest. Is that right? That's correct. And what's the authority for that? I don't remember whether you cited it. I don't think we cited that in our brief, but that is... You think it's well-established? It's very well-established with precedent from this court. For example, if you look at the spent nuclear fuel cases or other cases that are founded entirely on the Tucker Act. So, on the Contract Settlement Act, why isn't the right way to read this rights and duty language to mean that they are absolutely and simply opposite sides of the same coin? And it's obviously, it's one of these kind of legal expressions that often have A and B, which conceivably might be redundant. But in any event, why are, and you concede, I think that, have conceded in this litigation, that Shell's right matured before the 2011 repeal. Why isn't all the relevant duty exactly the correlative of the right? Well, what we're... We noted that Shell's rights under the contract had matured. That's very different than rights under the CSA. So, going back to the first principles of statutory interpretation, we'll look at the repealer schedule. And the repealer schedule states, the laws specified in the following schedule are repealed, except for rights and duties that occurred and proceedings that were begun before the date of enactment of this act. Now, the rights and duties, penalties, and proceedings language necessarily refers back to the laws that were repealed. The repeal of the CSA did eliminate any contractual rights. It did not eliminate, say, the United States' rights under other statutes from under which the government can seek a penalty. So, if the rights and duties arose under the contract before the repeal, when do you think the rights and duties rose under the CSA? I'm not sure how there would be a distinction. Because under the CSA, the rights and duties arise only with the filing of a CSA termination claim. And that's the holding of the Luff decision that both parties cited as finding precedent in this court. I mean, put another way that this court's predecessor in Luff held, having availed themselves of the privileges of the Contract Settlement Act, of which there are many, plaintiffs are bound by the limitations therein fixed on bringing suits in this court. What the court was holding, and it's very clear, is that parties need to make an actual election to avail themselves of CSA rights before they trigger any duties of the government. And then the Ford case also makes clear that you have to exhaust administrative remedies in the CSA before the government has any duties. Can I just explore a tiny bit what the consequences would be on a going forward basis? I'm assuming that the operation, maintenance and monitoring costs continue with this McCall site, is that right? Yes, those costs continue. So if the oil companies don't want to lose interest on those costs, and if you're right about the Contract Settlement Act, should the oil companies, I don't know, let's say every two months or one month or six months, file a new claim, maybe even a new action in the Court of Federal Claims, and just keep doing that so that they're losing maybe a month or two of interest, because that's the only difference between the Contract Settlement Act and the Tucker Act? Well, there are other allowable costs if you look at Section 106D of the Contract Settlement Act, but assuming that interest is the big one and the most important to the plaintiffs, they would have to make their own decision as the masters of their complaint. And in the spent claims on or about year six to capture the last six years of costs, but that's entirely up to the oil companies themselves as the masters of their complaint. And that really segues into the res judicata issue. The oil companies here were the masters of their complaints. They submitted a CSA claim to the government in 2005, and in it they asked for all future costs. And they enumerated those costs. If you go to page 26 of the Joint Appendix, they were even able to come up with a net present value number for these future O&M costs. But counsel, what do we do with the fact that all parties treated the prior action as a partial breach and the Court of Federal Claims made it clear that it had no authority to address anything else? So are you saying if someone asserts a claim that is not cognizable at all, that that claim is sufficiently resolved and is not addressed by the court that somehow that claim is sufficiently decided for purposes of res judicata? Yes, and that's this court's decision from last year, and Sowinski makes that abundantly clear. But we don't even need to go that far in this case. If you look at the trial court's opinion, once again, maybe page 13 of the appendix, the court, although it never had the benefit of the Shell 1 case, it nevertheless made the conclusion that somehow that the plaintiff would never be able to prove future damages. And that's simply wrong. In fact, as a matter of law... You referred a moment ago to appendix page 26 as designating a net present value of all future costs in perpetuity. Can you tell me what you're talking about? Oh, pardon me. It's page 29, and it was the 2005 administrative complaint. And it says, they will be required to pay future response costs... I'm sorry, we're not on that page. There are a lot of words on the page. Oh, subsection B. They estimate that they will be required to pay future response costs of approximately $16,651,508. So in 2005, the oil companies were able to quantify those numbers. They said it was an estimate, counsel. They said it was an estimate. Did they not? Yes, they said it was an estimate, but by reading that... And they were making this demand to an agency. This was a demand that the United States government pay them this money. They should be able to back that up with proving causation, foreseeability, and reasonable certainty. And that's all that's required to obtain future damages. Well, but wasn't... Isn't it fair to say that they were simply saying, we could resolve all of this right now if you wanted to? I mean, I don't see how that is a cause of action that actually gets addressed and decided for purposes of res judicata. Well, the reason is that if you then go back to the CSA, the CSA mandated that when you submit a claim, that that claim, the government's claim, decision on that claim is binding. That the decision is final and conclusive. And that it's final and conclusive unless the contractor sues in the Court of Federal Claims within 90 days. So, in conformance with that requirement that once you've made a claim under the CSA, you actually have to go to court if the government denies it. The plaintiff then sued in the Court of Federal Claims and at pages 101 and 102 are the pages of the complaint that are relevant here. Pages 101 and 102 of the appendix. And once again, they asked for future damages. Although they didn't actually use the term future, did they? This is paragraph 26 and 27 of the original complaint. They said they're entitled to all costs, whatever, but they didn't actually use the word future. But put that aside. I took it from your brief that you agree that if during the Shell One, I guess we call it, there had been a formal withdrawal of that claim, of a request, assuming one was made, for all future response costs, that there would not be res judicata. Right? They would have a better case. But the problem is that the trial court in Shell One or in Shell Two, for that matter, never went through that analysis. The court in Shell Two, without the benefit of the record in Shell One, made a conclusion that these costs that were sought were entirely speculative. And rather than following the plaintiff... Okay. But put aside the question of speculativeness now. I thought it was clear from your brief and indeed from the law that if Shell had formally said, we are not here seeking the costs not yet incurred, that that would then make the matter available once those costs were incurred in a future case. You don't concede that or you do concede that? If they had done that in their adjudication, either that the court didn't have jurisdiction or some sort of decision along those lines that would allow them to bring the case again. But that's exactly... But that's a very different fact pattern. This case is actually right on all fours with Swinsky, where... How is it, counsel? I really can't accept the right on all fours with Swinsky. I mean, relies heavily on brain life. I mean, in an infringement context, once you have been deemed a non-infringer, then you remain a non-infringer as it relates to the same product. That's a very unique patent infringement context. It's not on all fours with Swinsky. Well, Swinsky also covered what are the basic rules regarding res judicata and also held that failure to prosecute in the case is an adjudication on the merits. So this case, due to the oil company's failure to prosecute, acts as a judgment on the merits, and it meets all of the elements of res judicata. I see my time is up. Okay, now we'll save your rebuttal time. Any more questions at the moment for Mr. Tassini? None for me. All right. Thank you. Then we'll hear from Mr. Kirk. Thank you, Judge Newman, and may it please the court. The government's res judicata argument is foreclosed by this court's clear line of precedence in the spent nuclear fuel cases, recognizing that an exception to ordinary res judicata rules applies where, as here, the defendant commits an ongoing series of partial breaches. In Indiana, Michigan, the court held that future damages were unavailable because the breach was partial, not total, in that the utilities were still awaiting the balance of the government's performance. As the court explained... Counsel, do you agree with your friend on the other side that you, though, in your administrative claim, at least, you asked for those future monies? We did, Your Honor. We did, Judge O'Malley, but we don't think that makes any difference for several reasons. Number one, as you pointed out, that was in a context under the Contract Settlement Act where the act encourages the parties to settle their differences, if possible, and the hope then was we could make an estimate and settle our differences. Second, the fact that the complaint pointed out that the costs were ongoing is not in any way a suggestion that breach was not partial because the costs were ongoing. In fact, in Shell One, the oil companies recovered all of the costs incurred between 2006 and the trial at the end of 2015, beginning of 2016. Third, and most importantly, Your Honor, it just doesn't matter if the oil companies asked for future costs. We know that from Indiana, Michigan. Indiana, Michigan asked for future costs in the Court of Federal Claims, and then it came to this court asking for future costs, yet this court held no, future costs in a partial breach case are not available because they're speculative. And Indiana, Michigan raised the concern, well, under ordinary race judicata rules involving the rule against splitting claims, isn't that going to leave us completely without a remedy? And the court said no to that as well, and squarely held that in such cases, the proper result is for the victim of the breach to bring follow-on suits to collect the costs as they are incurred. And that decision in Indiana, Michigan followed the general rule going back almost 100 years to the New York Life decision in the Supreme Court in the 1930s. It followed the restatement on judgment, Section 26, and it followed the... Mr. Kirk, this is just around. Can I just, I guess, ask something that I didn't remember being a focus of the government's brief, but it's something of a focus of the argument this morning. Does this principle of the partial breach exception to race judicata apply even in a situation where, in the particular circumstances the future damages, in fact, are not speculative? And this obviously ties to the $16 million or $1,000 or something, $16 million estimate in page 29 of the appendix in the claim submitted to the agency. I believe that the law treats them as speculative as a matter of law, notwithstanding the oil company's attempt to come up with a net present value estimate in the claim letter. And I would direct you to New York Life on that, Your Honor, and to Indiana, Michigan. What the court said in Indiana, Michigan was that future damages necessarily have a highly speculative nature. That's at 422F3rd 1376. And if you think about it, no one can know what the costs will be beforehand. One can make an estimate, but by its very nature, that's going to be highly speculative. And that's why the government itself argued in Indiana, Michigan that future damages were speculative, and the government agreed that follow-on suits could be brought. And as to the government's argument that, in this case, because we sought future damages in the claim letter, that somehow that wipes out the rule, that can't be right because Indiana, Michigan squarely held, even though the plaintiff there was seeking future damages. The government has cited no authority for its proposed rule that some kind of formal disavowal or a dismissal without prejudice is necessary to preserve the right to seek the follow-on costs and follow-on suits. And once again, Indiana, Michigan... Can I just ask this? In all of the litigation here, show one, two, or whatever, has the government ever conceded that the net present value of the future response costs at issue here are non-speculative? I don't believe so. Even assuming that your claim to the agency, the $16 million and change claim, represents some sort of assertion on your part that those costs are non-speculative. In fact, that presumptive assertion, presumptive just for purposes of the question, was not one the government ever agreed with, was it? Your Honor, I don't believe the government has ever addressed it either way. They have not said, taken a position that they're not speculative, and I don't believe they've taken a position that they are or conceded that they are speculative. They've just studiously not spoken to the question. Can we turn to the CSA issue for a second? You seem to say that under the CSA, the rights and duties mature at, and I think you have two different times. One is when CERCLA was enacted, and the other is when the companies are held liable. Am I misreading that, or have you not decided when you think they mature under the CSA? We think that they mature, and again, it's really not under the CSA. The source of the contract. But to answer your question, Your Honor, we believe that both the rights and the duties matured when CERCLA was enacted. We recognize there's an argument that maybe they didn't mature until CERCLA liability was fixed by the judgment in the California District Court imposing CERCLA liability on the oil companies. But as Judge Leto recognized, which of the two it is just doesn't matter, because both are well before the 2011 repealer statute. So you think that, counsel, I know you're excited here, but do you think that the CSA grandfather clause ties directly to the contract? Is that right? It does, Your Honor, and the reason it does is we're supposed to look for the rights and duties of the parties, and the oil company's right to indemnification and the government's duty to indemnify is found in the contract. If you look at the CSA, it defines a termination claim in reference to include, quote, any claim under a terminated war contract. That's 41 USC section 103 H. We are bringing a claim under the terminated ABGAS contracts from World War II, and if you look at the plain language of the contract, and it's set out in a block quote on page 39 of the red brief, both the oil company's right to be reimbursed and the government's duty to indemnify mature once, quote, a federal law required the oil companies to pay, quote, new or additional reduction of ABGAS. So under that contract, their duty to indemnify and our right to receive indemnification matured once a federal law required payment. Circle was enacted in... One other question, I'm sorry. You might not know the answer to this, but how many pre-existing contracts do you think are covered by what I call the grandfather clause in CSA? After that, that still exists despite the repeal of CSA in 2011? I think there's a fair number because I'm aware of contracts similar to the ones that issue in this case with other oil companies. So I think it will be ongoing. Thank you. Okay. The government takes the position that the duty to indemnify didn't mature until the oil companies requested payment under the Contract Settlement Act, but that's not correct. The contracts don't say that the government shall pay upon request. They say that the government shall pay when a federal law requires the oil companies to incur new and additional with the substantive source of the right itself, which defines when the right matures. All the Contract Settlement Act does is lay out the administrative steps that must be taken before filing a suit in the Court of Federal Claims. But it recognizes again in the definition of termination claim that the substantive source of the right is the terminated war contract. This court's predecessor in the Lins case squarely held that the right to payment on a Treasury bill matured in July 1974, but the claim did not approve until September 1974 when the plaintiff presented it for payment. Lins confirms that the steps a right holder must take to enforce his right after it matures has no bearing on when the right matures. Under my friend's logic, if the government had voluntarily carried out its contractual duty to indemnify after the oil company's rights had matured such that there was no CSA administrative proceeding was even necessary, somehow the right and duties would not have matured at all. Well, that can't be right. The government also seems to argue in passing that the contractual duty to pay did not mature until the oil companies incurred and paid the remediation costs. But even if the government preserved this argument, it fails because it confuses when the duty matures with when performance of the duty came due. We know that from the binding decision in the Kraft case. The issue there was whether an Army reserve officer was entitled under a 1947 statute to retire as a colonel rather than as a lieutenant colonel as the Army maintained. What is your response to the government's argument that you really have to look to the point at which the administrative effort has been exhausted to see when the rights and duties mature? Your Honor, my answer is you have to look at the substantive source of the procedural rules for making a claim through the administrative process. The contract is the source and the contract says that the right to indemnification matures when a federal law requires you to pay something. And the federal law required the oil companies to pay when CERCLA was enacted in 1980. And again, the Kraft case illustrates this, Your Honor, because the claim was made under a 1947 statute. The officer retired in 1952 and then the 1947 statute was repealed in 1956 with a savings clause just like ours that preserved rights and duties that had matured prior to the 1956 repealer. The Court of Claims held in that case that Kraft's rights matured upon his 1952 retirement, not when he made his claim after 1956 and not when the pension payments serially came due from 1952 forward. It matured when his right to the pension, his substantive right to the pension, kicked in and that kicked in when he retired. Here, the oil companies' rights and duties matured when, under the contract, a federal law required them to make payments. The federal law required them to make payments once CERCLA was enacted. And with that, Your Honors, unless the Court has further questions, I'm happy to subside. Anything else for Mr. Kirk? Okay. Hearing nothing, Mr. Tosini, you have your rebuttal time. Thank you. I'd like to just begin with the discussion of Indiana, Michigan. Indiana, Michigan, first of all, was not a res judicata case because it involved damages available within a single case. Here we have a final and conclusive judgment that the trial court essentially reopened in this case to allow damages. Second, this case is not really a SNF case because the contracts were terminated in the 1940s, unlike Indiana, Michigan. And the most important holding in Indiana, Michigan was that damages for total breach would have been foreclosed by statute in that case because the contract was ongoing. The contract was ongoing. So, it was not taking nuclear waste from these facilities. Can you tell me, counsel, how you distinguish the Kratz case? Well, the Kratz case, yes, the relevant administrative action was when Mr. Kratz was involuntarily retired before the repeal. So, for example, if you want to look at the hypothetical, let's say Mr. Kratz had his 20 years in before the statute was changed to a less favorable statute, and he decided to stay in until afterwards. Well, he had a right to retire beforehand, but he didn't retire until the new statute was enacted. He would have been subject to the new statute. But his involuntary retirement at the time that the government involuntarily retired him was unlawful in that the government retired him as a lieutenant colonel instead of a colonel. So, you got to hit the nail right on the head that this was the administrative action that's relevant in Kratz. And I'd like to close with the Contract Settlement Act issue. There's a very clear opposition between the two parties that we believe rights and duties under the CSA are what the court should be looking at, the plaintiff's alleged under the contracts. We do not make any contention regarding plaintiff's rights under the contracts. All this has to do, as we discussed earlier, all that really matters here are rights and duties under the CSA in the plain language of the repealer statute. And the Luff case that both parties cited makes clear that those rights and duties did not arise until there was an actual CSA termination claim filed. Thank you. Okay. Any more questions, Mrs. Sassini? Nope. No. All right. Thank you. Thanks to both counsel. The case is taken under submission.